UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

BRASHARD DELANEY,

                    Plaintiff,                              Case No. 2:25-cv-133

v.                                                          Hon. Hala Y. Jarbou

SARAH SCHROEDER et al.,

                    Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Velmer, Zampese, and Perry. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint against properly joined Defendant Washington for failure to state a claim as detailed below. Additionally, the Court will dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Taylor, Fionti, Arsenault, and Schroeder. Plaintiff's Eighth Amendment claims for damages against Defendants Taylor, Fionti, Arsenault, and Schroeder in their respective personal capacities remain in the case.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MDOC personnel: MDOC Director Heidi Washington; MBP Warden Sarah Schroeder; MBP Lieutenant Unknown Arsenault; MBP Sergeants Unknown Taylor and Unknown Perry; and MBP Corrections Officers Unknown Fionti, Unknown Velmer, and Unknown Zampese.

Plaintiff alleges that during the morning of May 2, 2025, Defendant Taylor and Fionti entered his cell following an incident with non-party Corrections Officer Mowery. (Compl., ECF No. 1, PageID.4.) Defendant Taylor handcuffed Plaintiff and placed him in a restraint chair. (*Id*.) Defendants Fionti and Taylor took Plaintiff to Q-Block. (*Id*.) Defendant Fionti strip-searched Plaintiff. (*Id*.) Defendant Fionti instructed Plaintiff to "spread his cheeks." (*Id*.) Defendant Fionti put his fingers in Plaintiff's mouth. (*Id*.) Plaintiff felt degraded and humiliated. (*Id*.)

Defendants Taylor and Fionti then partially hog-tied Plaintiff. (*Id*.) Plaintiff's hands were chained at his waist, he was belly-chained, and his ankles were chained. (*Id*.) Plaintiff reports that the chains cut his flesh like a knife. (*Id*.) When Plaintiff complained, Defendant Taylor informed him that Plaintiff "should have thought of that before he dressed out a C/O," presumably

2

Corrections Officer Mowery. (*Id*.) Defendant Fionti then brushed his hand across Plaintiff's "butt crack." (*Id*.) Plaintiff was so afraid he fell to the floor on his stomach. (*Id*.)

Plaintiff remained in that chained position for more than a day. (Id., PageID.6.) He reports that the cell was dirty, dusty, and smelled of urine. (*Id*., PageID.4.) Defendant Arsenault entered the cell to review a misconduct ticket with Plaintiff. (*Id*.) Plaintiff complained that he could not move. (*Id*., PageID.5.) Defendant Arsenault advised Plaintiff, "that's the point, we're going to break all the fight out of you." (*Id*.)

On May 3, 2025, Defendant Schroeder entered the cell Plaintiff occupied. (*Id*., PageID.6.) Plaintiff told Defendant Schroeder he could not move. (*Id*.) She informed him that he could move. (*Id*.) He advised her he could not get any water and that he felt dehydrated. (*Id*.) She advised him to drink some water and again told him that he was able to move. (*Id*.) She also told Plaintiff that she might have him cut loose that shift or the next shift. (*Id*.)

Defendant Arsenault entered Plaintiff's cell at 11:30 p.m. on May 3. (*Id*.) He told Plaintiff that his "food loafs" had been spit in and that Arsenault intended to spray mace in the ventilation to aggravate Plaintiff's asthma. (*Id*.)

Plaintiff reports that non-party Corrections Officer Basinski packed up Plaintiff's property. (*Id*.) A few days later the property was sent to the property room. (*Id*.) Plaintiff reports that his television was broken, his legal mail was ransacked, his legal books were destroyed, and his evidence thrown away. (*Id*.)

Plaintiff wanted to request preservation of Defendant Taylor's body cam video. (*Id*., PageID.7.) Plaintiff asked non-party Prison Counselor Nebel for the form. (*Id*.) Defendant Nebel did not provide the form. (*Id*.)

Plaintiff alleges that Defendant Washington is aware of the MBP staff custom of abuse with hog ties. (*Id*.) Plaintiff claims that "over six prisoners in unit E-Block have been hog-tied. (*Id*.)

Three weeks after the incident with Defendants Taylor and Fionti, Defendant Zampese entered Plaintiff's cell for a shakedown. (*Id*., PageID.8.) Defendant Zampese informed Plaintiff he would be placed in cell 13 during the shakedown. (*Id*.) Plaintiff complained because the cell smelled of feces. (*Id*.) Later that day, Plaintiff asked Defendant Perry for a form to request Defendant Zampese's body cam video. (*Id*.) Defendant Perry did not bring a form. (*Id*.)

Plaintiff reports that Defendant Zampese walks around with razor blades in his pocket and threatens to plant weapons on prisoners. (*Id*.)

Plaintiff makes no factual allegations regarding Defendant Velmer.

Plaintiff seeks $1 million in damages to compensate for his pain, suffering and mental torment.

Plaintiff contends that Defendants Schroeder, Taylor, Arsenault, Fionti, Washington, and Zampese violated the Eighth Amendment's proscription against cruel and unusual punishment. He claims that Defendant Taylor and Fionti used excessive force. Plaintiff claims that Defendant Velmer intentionally destroyed Plaintiff's property. Plaintiff claims that Defendant Washington failed to supervise. Plaintiff claims that Defendant Zampese is liable for retaliation. And, finally, Plaintiff claims that Defendant Perry violated Plaintiff's due process rights.

## II.    Misjoinder

### A.  Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

4

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (explaining that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether

more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Taylor is the first Defendant named in the *factual* allegations in the complaint. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that on May 2, 2025, Defendant

Taylor—along with Defendant Fionti—entered Plaintiff's cell, restrained him, moved him to segregation, strip-searched him, hog tied him, and left him in a dirty, dusty, smelly cell.

Plaintiff's allegations against Defendant Fionti are quite obviously transactionally related to Plaintiff's allegations against Defendant Taylor. Moreover, Plaintiff's claims against Defendants Arsenault and Schroeder are also transactionally related in that those Defendants permitted the allegedly improper conditions created by Defendants Taylor and Fionti to continue. Finally, Plaintiff's claim that Defendant Washington is liable for the conditions imposed on Plaintiff because she was "aware" of hog-tie incidents but failed to properly supervise, is also related, although more remotely, to his claims against Defendants Taylor, Fionti, Arsenault, and Schroeder.

Plaintiff's allegations against Defendants Zampese and Perry,[1] however, stem from other discrete events that occurred during Plaintiff's incarceration at MBP. It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred during his incarceration at MBP and because he subjectively views all of the events as part of a vast conspiracy against him. However, Plaintiff's subjective belief and interpretation of events does not transform separate events regarding Plaintiff's excessive restraint on May 2 and 3, and his placement in a different cell during a shakedown three weeks later, into events that arise out of the same transaction or occurrence.

Accordingly, the Court concludes that Plaintiff's claims against Defendants Taylor, Fionti, Arsenault, Schroeder, and Washington are properly joined. However, Plaintiff has improperly joined Defendants Velmer, Zampese, and Perry.

---

[1] Because Plaintiff makes no factual allegations against Defendant Velmer, there is no possible relationship between that claim and the claims against Defendants Taylor, Fionti, Arsenault, Schroeder, and Washington.

### B.  Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Velmer, Zampese, and Perry to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The

8

statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred in 2024 and 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Velmer, Zampese, and Perry, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Velmer, Zampese, and Perry because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[2]

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2] Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). With regard to the remaining Defendants, Plaintiff claims they have violated his Eighth Amendment rights.

## IV.    Discussion

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

*Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A.    Defendant Washington

Plaintiff lists MDOC Director Washington as a Defendant, but he fails to allege any facts showing how Defendant Washington was personally involved in the violation of his constitutional rights. Instead, Plaintiff mentions Defendant Washington's supervisory position, and notes— without any underlying factual allegations--that Defendant Washington was aware of other instances where prisoners were hogtied at MBP.

11

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff's allegations regarding Defendant Washington do not go beyond identifying her supervisory position and then stating she failed to supervise. Plaintiff's allegations against Defendant Washington fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899;

12

*Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in their conduct. Accordingly, for these reasons, Plaintiff's claim against Defendant Washington will be dismissed for failure to state a claim upon which relief may be granted.

### B.    Defendants Taylor, Fionti, Arsenault, and Schroeder

#### 1.    Official Capacity Claims

Plaintiff brings claims against Defendants in their official as well as personal capacities. (Compl., ECF No. 1, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated

13

Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Moreover, Plaintiff seeks only monetary damages. But the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages for failure to state a claim upon which relief may be granted.

### 2.     Personal Capacity

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true. Under these circumstances, at this time, the Court will not dismiss Plaintiff's Eighth Amendment claims for damages against Defendants Taylor, Fionti, Arsenault, and Schroeder in their personal capacities because Plaintiff alleges that each Defendant knew about Plaintiff's allegedly unbearable conditions of confinement and, despite that knowledge, continued Plaintiff's placement in those conditions.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, the Court will drop Defendants Velmer, Zampese, and Perry as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

Additionally, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's claim against Defendant Washington under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Plaintiff fails to state a claim upon which relief may be granted . Under those statutory sections, the Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Taylor, Fionti, Arsenault, and Schroeder. Plaintiff's Eighth Amendment claims for damages against Defendants Taylor, Fionti, Arsenault, and Schroeder in their respective personal capacities remain in the case.

An order consistent with this Opinion will be entered.

Dated: March 30, 2026              /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE